Good morning, if it pleases the court. Good morning. Jeff Callis for Mr. Reed, the appellant and cross appellee. The dispute here that we have is whether or not the trial court considered the proper evidence and gave it the proper reading. Now, we know that in a motion for summary judgment that under CELATEC or Mason v. New Yorker magazine or Sombrato that the non-moving party is given all of the benefits as to truth, credibility, et cetera. What we have is a non-moving party who disputes almost all of what Officer Twenger says happened. The question that we have in front of us is, is there anything else that would justify the court granting summary judgment? Well, let's look at some of these things. The first one I looked at is heck, okay? I read your complaint. The complaint says that Twilliker opens the door of Vernie Reed, immediately starts pushing him, threatens to blow his brains out, and then he puts his car into gear and attempts to flee. If I read the plea, and I read it pretty carefully, the plea says, and this is what your client said, I was driving a vehicle and was stopped by the Tacoma police officers. The registered owner of the vehicle had a warrant outstanding so my car was stopped. For that reason, I was unaware of the fact. I overreacted and attempted to escape. An officer and I struggled and intentionally put the car in gear and tried to drive away. Now, if I believe what he said when he pleaded, how is it that I can suggest that he can turn and plead what he pled, which I read to you? Well, Your Honor, we have to take a look at Betts v. L.A. and similar cases. Well, I've looked at all those cases, but the bottom line is he pleads in this case to an attempted assault. He pleads in this case to have struck the officer because the officer was trying to give a warrant to him, and therefore, at that point, he pleads to that, and then he turns around and in his plea or in his complaint, he says, No, I didn't do any of that. The officer came in, opened the door, started beating me up, made epithets at me, started firing at me. Seems to me that that is exactly what heck would outbar. I would suggest, Your Honor, that there is a spatial difference here. The assault on the officer ended when the officer was hit by the car. Okay, now, but see, that's where I'm having some trouble because, yeah, I'm reading that. You're in the guilty plea says, Toward where it was completely out of the car and no portion of the car hit him. Okay, that's what it says there. But leaving aside these discrepancies even from your own client, the key issue to me is he may have been out of the car. I take that as a given. And the door may or may not have hit him already, but the key fact that nobody contests, I think, is that he's out of the car, but he's kind of attached to the car with this cord. So show me somewhere in the record where that's somehow disputed or a factual issue or not the case. Well, there's two things in the record, Your Honor, and I will try to get them for you as I'm speaking. One, the officer says that he lost sight of his microphone, and it could have been in the car. That's in his deposition. Right. And then he doesn't say anywhere in his deposition I was pulled, yanked, that the microphone cord became taut. That's nowhere in there. Mr. Reed says it wasn't in the car. But then the officer, in a declaration for summary judgment, adds facts that were not in the deposition that were never stated. And that fact is I was attached to the car. But is that contested somewhere? Well, Mr. Reed says he wasn't. Where? Where does he say that? I guess I probably should have been clearer. Where is that testimony? Because I didn't find it. That's what I'm looking for. Give me one second. Maybe you want the time to look at that while the other counsel is up here talking. But I'm just saying to you that we have one plead as to the attempted assault. And then we have another pleading as it relates to this 1983 claim. And, frankly, if I agree what he pled in the attempted assault, I'm having a tough time understanding how he can plead what he did in his 1983 claim. Now, if you want to make a case, he could have pled, well, I did attempt to assault the guy, but he had more force. But that's not in the complaint. The complaint is totally different. The complaint says, no, I didn't do that. All that happened in this case is this officer got in and started beating me up and yelling epithets at me and then starts to shoot me. Well, that totally derides what he pled in his criminal complaint. And so why doesn't, heck, which says I'm a federal court and I ought not get involved in adjudicating state things that have already been done. Why do I get involved there? Well, because a finding of excess force does not undo any of the elements. Well, if that was in your complaint, that's one thing. That's a great argument in theory because all it does is state the theory. But I've got to look at what you're complaining and what you're going to prove. I haven't got to look at what you're now going to argue. If that's what you're pleading, then plead it, and then I can let you in. But on this complaint, you don't admit that at all, right? Unfortunately, you are correct. Let me see if I can find that. Well, you want to continue with your argument on other issues? Do you want to have the remaining time reserved for rebuttal? If you would, Your Honor. Yes. Good morning. May it please the Court. Jean Homan on behalf of Officer Twilliger and the City of Tacoma. The Court has identified the key issues in this case. First, with respect to the heck issue, the claims that are being asserted in this case are barred by the guilty plea that Mr. Reed entered in the Pierce County Superior Court. The facts that he pled to were the officer was in my car. I put the car in drive, tried to drive away with him in it. The car struck him. He also testified in his deposition that when he was ---- all before the officer started shooting. But the piece of---- I mean, see, getting back to the words used by your little friend, there was a spatial difference. There really wasn't because in this case, this is more like the Cunningham case where robbers shot at officers, provoking the officers to return fire. This was a single temporal incident. The officer was trying to take Mr. Reed into custody. His body was inside the car. And Mr. Reed concedes that fact in his depositions on page 31 through 33. Three-quarters of the officer's body was in the car when he dropped it into drive. But I think his complaint is that he was in there, but then he was out of the car. He got out of the car. The assault started the moment Mr. Reed threw that car into drive with the officer in it. When did it end? It ended when his microphone cleared the vehicle. Because as long as his equipment was trapped inside the vehicle and he was in danger of being drugged, the assault is ongoing. Well, I know he says in his deposition, I think we're leaving out the part where I believe there was equipment of mine stuck in the vehicle as he was leaving. Correct. So we had asked Mr. Kalis, is there any testimony to refute that? Do you know of anything by Mr. Roeder or Mr. Reed or anything else that changes that testimony? No. What Mr. Reed essentially says is, I believe that the officer was out of the car when I was finally able to accelerate. But just out of the car doesn't say what was happening with the mic. Exactly. And there's absolutely nothing in the record to establish that Mr. Reed would even be in a position to know that the officer's microphone was trapped in the car. And the officer's statement in deposition is not inconsistent with his declaration. His declaration simply expands on what he said in his deposition. His deposition was, I believe the microphone was trapped in the car. His declaration says, I'm watching the cord stretch out as Mr. Reed is driving away. And it's uncontested that the radio itself is literally strapped to his uniform. Had the mic not come clear of the car, he would have been drugged. The uniform would or the radio would not have been pulled from the uniform. So under those facts, the district court's grant of summary judgment should be affirmed. There is no evidence in the record to contest the officer's testimony that his radio was trapped and he did not discharge his weapon until he realized he was in danger of being drugged and that he stopped discharging his weapon when he realized that his radio was free. Let me ask you this. Sure. Did Mr. Reed rely at all on the interdepartment memo in making his arguments? The chief of police memo? He braced them at the district court level, but as the district court pointed out, an alleged violation of departmental policy cannot get us to a constitutional violation. The department's determination was that the last shot was one too many and violated the department's policy, but that is not instructive as to whether or not the officer's application of deadly force was constitutional. I mean, to be clear then, it seemed to me that the memo was used in the district court on this point, which was departmental policy, and it was not used as a recitation of the facts. Correct. As to what may or may not have happened at the scene. Is that right? Correct. Yes. That was my question. I'm sorry. I misunderstood the question. The summary judgment can be affirmed on any basis, and as outlined in the brief, the officer's use of deadly force was objectively reasonable under these circumstances and therefore constitutionally permissible. Mr. Reed should be estopped from arguing facts other than those stipulated to in front of the Pierce County Superior Court, but facts which allowed him to obtain a far more favorable outcome in the criminal proceeding than he otherwise would have. Should I remand this case and allow the plaintiff to amend to suggest in this particular matter that, yes, I did assault or I did attempt to assault, but nonetheless the police used unreasonable force? No, because this isn't a 12B or 12C motion. This is a summary judgment motion. Mr. Reed had the benefit of full discovery. He had an opportunity to present the theories and evidence that he thought best served him at the district court level, and to allow him to go back and amend would just be a second bite at the apple. The evidence that was adduced on summary judgment was that the officer's equipment was trapped in the vehicle and he was in danger of being dragged by the vehicle when he discharged his weapon. Had the plaintiff asked to amend ever? No. And so on the other bases outlined in the city's brief, the dismissal of the claims as against the City of Tacoma, the district court dismissed them because there was no constitutional violation by Officer Twilliger. Even if you were to determine there was a question of fact on that, there's still no evidence of a failure to train by the City of Tacoma. The officer is entitled to qualified immunity as outlined in the defendant's brief. The authority that existed at the time of this incident, October of 2012, would not have put a reasonable officer on notice that a discharge of his weapon under these particular circumstances was not objectively reasonable. There is a multitude of bases upon which to affirm the district court's order in this case, and we would ask this court to do so. Thank you. First of all, Your Honor, I believe you'll find on tab 13, page 17, line 24, through page 18, line 4, where Mr. Reed says that the officer was completely out of his car. Completely. Right, but that, you know, I don't see that as inconsistent with that he physically was out of the car. And is there anywhere he says, no, there was no wire, there was no microphone? First, let's answer that question. Is there anywhere where that is contested? No. That particular thing is not there. But I would point out to the court that a police microphone cable is probably 3 1⁄2 feet, 4 feet long.  I'm just asking. No, no, I'm asking if it's in the record. No, it's not in the record. All right. But what is in the record is that the car was moving forward, and a known fact of physics, a car going one mile an hour travels 1.4 feet in a second. So if this officer took more than two seconds to get out of the car, which was moving, and pick up his gun, he would have been at the back end of the car. And his cable would have been either loose or he would have been pulled to the ground. So at that point, when he's at the end of the car and starts to shoot, Mr. Reed is no longer a threat to him. So did you offer that argument to the district court? Pardon? Did you offer that argument to the district court? Indirectly, Your Honor, not directly. Well, the answer is no, I'm afraid. Yes. Okay. I was not involved in the case at that time. I understand. But you have to take the facts as they land here. I realize that as appellate counsel, and we appreciate that. I will say it was not directly stated, and the court probably was right in not considering it. But that doesn't mean in a de novo review that this court can't take a look at what is a well-known principle and what is common sense and use those to help guide his judgment. And we know the car is moving. We know how far it moves in a second. And even if we give the officer the benefit of the doubt that he was really quick, that he got that gun out really fast, and that he started to shoot very quickly, that car would have been, and he says he stepped back in the car, he would have been beyond, at least at the tire or beyond the tire. We also know that at least some of his shots hit the back window. To shoot the back window, he would have had to be all the way at the back end of the car. So we know as a fact, because he was never pulled down, the court is a limited length, it's not unlimited, that between the time he got out of the car and the time the car got to a position where he could shoot into the back window, that microphone had to have been released. And at that point ‑‑ I would compliment you for what I think is a really common sense, clever, and factual argument that unfortunately wasn't made and doesn't have evidence in the record. But I think you've done an excellent job with what you've been handed. I agree, Your Honor, I'm doing the best I can with what I have. You're doing a great job. Let me ask you another question. Sure. The second issue, I guess, which I hoped you'd address was the qualified immunity issue. It doesn't seem to me that there's any case which would suggest now on the evidence which I have in front of me that this police officer was being drug either in the car or with his microphone. And I have no testimony contrary to the fact that he was only firing when he was being drugged. That's his testimony, and there's no testimony otherwise. I guess I'm trying to figure out what case would say he's not entitled to qualified immunity. Well, I think, Your Honor, the issue there becomes one of immediate danger. And the trial court turned around and said, having your microphone cable attached to the car created an immediate danger. I don't believe that that's necessary. Well, I want the case because, as you well know, on this prong about is there a case, the Supreme Court's been pretty clear white is the last one out. We've got to have a case almost dead on to suggest. I mean, they don't say dead on, but then when they go into the opinion and you start reading it, it seems like it's pretty much dead on. So I looked for the case. I couldn't find one in these circumstances. I could not find one that had a similar relationship, that is, a microphone and an officer being pulled. And the court has made it clear that generalizations don't count anymore. It hasn't said how tight it has to be, but we do know generalizations don't count. We're learning case at a time. So I hear from the Supreme Court. I would say that. I thank you for your frankness on that because I think that's good. I think that if there is a case that might have a little bit of bearing, it would be the Price v. Cervi case, 513 F3rd 967. And that's the case that says basically a belief that you're in danger is not sufficient. It has to be something that factually shows you are in danger. And I don't know that pulling on a microphone cord is a sufficient factual statement. If the officer said, I was tripped, I was falling into the car, and then the court let go, I would say you have facts that then take you there. Again, that's a good, that's a surprisingly genuine argument. But if I were being, if I were attached to a car with my microphone attached and me being pulled by the car, which is pulling away, and me not having any way to get that microphone off, I'm having a tough time with that. And, Your Honor, there are facts in here that I could argue that say if someone's being pulled, they grab the microphone cable with one hand and shoot with the other. He says he shot with both hands. Excuse me. So, I mean, there are things that make it difficult on both sides. Well, it's not a perfect world when you're attached to a car with your microphone, okay? Yes. I agree. It's not a perfect world having to shoot with one hand. So, at that point, Your Honor, I think I will answer any other questions, or we're back out. Thank you. Thank you. I'd like to thank both counsel for your argument this morning. The case of Reed v. Tacoma is submitted. We'll next have argument in Morales v. Fry.
judges: McKeown, Bea, N.R. Smith